IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION ED·ED4

01 MAY -3 PM 12: 35

CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| ANDRE WILLIAMS, BRENDA WILLIAMS, individually and as next friend of her minor child BRESHONTAE WILLIAMS; ANTHONY JACKSON, individually and as next friend of his minor children, JAREEM JACKSON and KAREEM JACKSON; JOYCE PALMER as next friend of her minor child, VICTORIA PALMER, on behalf of themselves and all other similarly situated, <br><br> Plaintiffs <br><br> v. <br><br> LIEUTENANT ERNEST BROWN # 353; SERGEANT EDWIN A. THOMAS # 2262; SERGEANT KENNETH KROK #1599; OFFICER ISAAC LEE, JR. # 10353; OFFICER SEAN S. BRANDON # 18866; OFFICER D. HOARD # 8105; OFFICER A. JONES # 19462; and more than 15 additional UNIDENTIFIED CHICAGO POLICE OFFICERS, in their individual capacities; and the CITY OF CHICAGO, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

No. 01C 3228

JURY TRIAL DEMANDED

DOCKETED
MAY 0 4 2001

JUDGE BUCKLO

MAGISTRATE JUDGE BOBRICK

## CLASS ACTION COMPLAINT

Plaintiffs, by counsel, allege as follows:

INTRODUCTION

1.    Plaintiffs bring this civil rights class action seeking money damages on behalf of themselves and all others similarly situated ("Plaintiff Class") (collectively "Plaintiffs") arising under 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. § 2201 et seq.

2.      Plaintiffs' claims arise from the Chicago Police raid of the Stateway Roundball Classic, a community basketball tournament held at the Stateway Gardens Field House, 3658 South State Street in Chicago, on the evening of February 22, 2001, where Defendants invaded a lawful and peaceful community gathering of African American families. During the raid, Defendants, acting under color of law, unlawfully detained Plaintiffs and subjected Plaintiffs to unlawful, unreasonable, and unjustified searches and seizures of their persons and personal effects. Defendants seized and searched Plaintiffs, from children and teens to adult women and men. The Defendants, by these acts, deprived Plaintiffs of their rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable searches and seizures.

JURISDICTION AND VENUE

3.      The jurisdiction of the Court is conferred by 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction is conferred by 28 U.S.C. § 1367.

4.      Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391.

NAMED PLAINTIFFS

5.      Plaintiffs Brenda and Breshontae Williams are residents of the City of Chicago and United States citizens. Brenda Williams is a 25-year-old African American woman and mother of her one-year-old child, Breshontae Williams. Brenda Williams took her daughter Breshontae to the Stateway Field House to watch the Stateway Roundball Classic on February 22, 2001. Plaintiff Breshontae Williams brings this action by her mother and next friend, Brenda Williams.

6.      Plaintiff Andre Williams is a 27-year-old African American man, a resident of the City of Chicago, and a United States citizen. He was a basketball player for Team #2 in the Stateway Roundball Classic. His team was scheduled to play on the evening of February 22, 2001.

7.        Plaintiff Victoria Palmer is a 13-year-old African American child, a resident of the City of Chicago, citizen of the United States, and sixth grade elementary student at Raymond School in Chicago. She was a spectator at the Stateway Roundball Classic on February 22, 2001. Plaintiff Victoria Palmer brings this action through her mother and next friend, Joyce Palmer. Joyce Palmer is also a City of Chicago resident and United States citizen.

8.        Plaintiffs Anthony, Jareem, and Kareem Jackson are residents of the City of Chicago and United States citizens. Anthony Jackson is a 40-year-old African American man. He is the father of Jareem and Kareem, his 9- and 10 year-old sons. Anthony Jackson was a basketball player for Team #2 in the Stateway Roundball Classic. He brought his sons, Jareem and Kareem, to watch him play on February 22, 2001. Plaintiffs Jareem and Kareem Jackson bring this action through their father and next friend, Anthony Jackson.

DEFENDANTS

9.        The "Individual Defendants"-- Lieutenant Ernest Brown, Sergeant Edwin A. Thomas, Sergeant Kenneth Krok, Officer Isaac Lee, Jr., Officer Sean S. Brandon, Officer D. Hoard, Officer A. Jones, and more than 15 additional unidentified Chicago police officers -- were at all times relevant to this Complaint acting under color of state law as police officers of the City of Chicago and within the scope of their employment. Plaintiffs sue all of the Individual Defendants in their individual capacities.

10.        Defendant Ernest Brown was the Commander of the Public Housing Unit of the Chicago Police Department on February 22, 2001. Sergeants Thomas and Krok were supervisory officers in the Public Housing Unit of the Chicago Police Department on February 22, 2001. Officers Lee, Brandon, Hoard, and Jones were tactical officers assigned to the Public Housing Unit of the Chicago Police Department on February 22, 2001.

11. Defendant City of Chicago is an Illinois municipal corporation, and was, at all times relevant to this Complaint, the employer and principal of the Individual Defendants.

CLASS ALLEGATIONS

12. Named Plaintiffs bring this lawsuit on behalf of the Plaintiff Class seeking monetary damages pursuant to Federal Rule of Civil Procedure 23 (b) (3). Plaintiffs institute this class action on behalf of themselves and all other persons who were unlawfully seized and searched in the Stateway Gardens Chicago Park District Field House during the evening of February 22, 2001 by Defendants during the Defendants' raid of the Stateway Roundball Classic basketball tournament.

13. Class action status under Rule 23 is appropriate in this case because the members of the class are so numerous that joinder of all putative class members is impractical. On information and belief, approximately 250 African American persons were subjected to Defendants' unconstitutional conduct and are members of the Plaintiff Class.

14. Plaintiffs' claims arise from a common course of conduct committed by Defendants. Defendants raided the February 22, 2001, Stateway basketball tournament, and systematically seized and searched Plaintiffs and Plaintiffs' personal effects. There are questions of law and fact common to the class, which include but are not limited to:

    a. Whether Defendants violated Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution to be secure in their persons, papers, and effects from unreasonable searches and seizures;

    b. Whether Defendants had probable cause to raid the Stateway Gardens community basketball tournament on February 22, 2001;

c.   Whether Defendants possessed a warrant authorizing their raid of Stateway Gardens community basketball tournament and searches and seizures of Plaintiffs and Plaintiffs' effects on February 22, 2001;

d.   Whether Defendants had probable cause or other legal justification to seize and search Plaintiffs' persons and effects in the Stateway Gardens community basketball tournament on February 22, 2001;

e.   Whether Defendants violated Plaintiffs' Constitutional rights by raiding the Stateway community basketball tournament, and seizing and searching Plaintiffs and their personal effects without a warrant on February 22, 2001;

f.   Whether Chicago police command authorized Defendants to raid the Stateway community basketball tournament and seize and search Plaintiffs and Plaintiffs' personal effects on February 22, 2001;

g.   Whether Defendants conspired and agreed to deprive Plaintiffs of their Constitutional rights according to a common plan.

15.   The claims of the named Plaintiffs are typical of the claims of the entire class, because each member of the class was subject to Defendants' common course of unconstitutional conduct.

16.   The named Plaintiffs will fairly and adequately protect the interests of the class because they seek money damages and declaratory relief on behalf of the entire class as a whole and have no interests antagonistic to other members of the class. Plaintiffs are represented by counsel experienced in class action litigation.

17.     The class action satisfies Rule 23 (b) (3) because questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

FACTS

18.     For more than ten years, organized basketball tournaments have taken on special significance in the Stateway community.  At Stateway, a community long plagued by limited public resources for organized recreational activities, these games have become a family tradition– fun-filled havens where residents of neighboring communities unite in friendship and peace.

19.     The events feature more than just basketball.  The tournaments teach teamwork, love and respect for others, skills for success, and self-esteem.  They provide inspiring alternatives to gangs, drugs, and violence, social problems that have inflicted great damage upon many inner-city communities.  Most importantly, these activities provide young people and adults in the greater Stateway community with hope and dreams for a better life.

20.     For more than a decade, City of Chicago and federal officials have supported basketball leagues in Chicago's public housing communities, noting their success in preventing crime and creating structured activities that demand discipline and good character. Mayor Richard M. Daley, who has attended the games, emphasized, "New ideas – that's what you need.  Some of these guys could have been gang-bangers.  Now they're maturing, playing together, playing as a team.  That's what life is all about." David Southwell, "Bradd Leads East to Victory," Chicago Sun-Times, July 31, 1994, p.23.

21.     The Stateway Roundball Classic is part of the tradition of basketball tournaments popular with Stateway residents. Founded by South-Side native Samuel Alexander, the annual event, which runs for more than two months (February through April) in the Stateway Gardens Chicago Park District Field House, consistently draws hundreds of players and spectators each week from the greater Stateway community.

22.     The tournament has come to embody the positive values of the Stateway community– it promotes unity and friendship, and demonstrates the potential of cooperative, community-based activities designed for families.

23.     The Stateway Roundball Classic has a history of non-violence. Before February 22, 2001, there had never been any significant violent incident during the hundreds of games played throughout the history of the Roundball Classic tournament in the Stateway Field House, including the six previous tournament games held earlier in February 2001.

24.     Continuing in this long-standing tradition at Stateway, Plaintiffs – young men, women, children, families – gathered at the Stateway Gardens Chicago Park District Field House, 3658 South State Street in Chicago, to participate in the Stateway Roundball Classic tournament in the early evening hours of February 22, 2001.

25.     The February 22, 2001 Roundball Classic events featured two basketball games at the Stateway Field House.  The first game was scheduled to begin at 7:00 p.m.

26.     Prior to Defendants' raid on this community gathering, Plaintiffs were enjoying a typically peaceful, joyous evening at the Stateway Roundball Classic.

27.     During the second half of the first game, the Individual Defendants (excluding Defendant Brown) – including more than 20 Chicago Police Officers of multiple police units (collectively referred to herein as the "Individual Defendants")[1] -- stormed into and raided this community event.

_____

[1]Hereafter, the term, "Individual Defendants" shall exclude Defendant Brown.  Defendant Brown shall be identified separately.

7

28.     Upon information and belief, there were approximately 250 people (all African American) present inside the Stateway Field House at the time of the Chicago police raid.

29.     The Individual Defendants imprisoned Plaintiffs inside the Field House. The Individual Defendants refused to allow Plaintiffs to leave, without being subjected to search by Chicago police officers.

30.     The Individual Defendants blocked each exit of the gymnasium by pulling their police cars against the outside of each door. The Defendants used their police cars to barricade the parking lot to the Field House, preventing Plaintiffs' cars from leaving the lot.

31.     A supervisory officer ordered a number of the Individual Defendants to position themselves in front of each possible exit inside the gymnasium, further preventing Plaintiffs from leaving the Field House. Other Individual Defendants blocked each entrance and exit to the Field House in the main lobby of the building.[2] As Defendants imprisoned Plaintiffs in the Field House, Individual Defendants searched Plaintiffs' bodies and Plaintiffs' personal belongings.

32.     Defendants then methodically seized and searched each and every Plaintiff and his or her personal effects. As part of Defendants' systematic tactics, the Individual Defendants ordered Plaintiffs (with few exceptions) to line up in the lobby of the Field House, where Individual Defendants searched Plaintiffs' bodies and personal possessions.

33.     Individual Defendants' dehumanizing and unlawful treatment of Plaintiffs occurred in front of Plaintiffs' families, friends, and community.

_____

[2] The main lobby is located inside the Field House, which leads to a hallway to the inner doors to the gymnasium.

8

34.     After approximately two hours of police occupation of the community event -- after having detained, seized, and searched Plaintiffs and their personal effects -- the Individual Defendants left the Stateway Field House.

35.     At all times relevant herein, Plaintiffs behaved lawfully and provided no probable or reasonable cause or suspicion, or any other legal justification for their seizure, detention, and search by Individual Defendants.

36.     The Individual Defendants did not possess a warrant for their search of the Stateway Field House, nor did they have a warrant to search Plaintiffs or their personal effects.

37.     The Individual Defendants refused to disclose the purposes of the raid to Plaintiffs or any intended targets of the police action. At no time did any of the Individual Defendants show Plaintiffs or Chicago Park District personnel a warrant authorizing the raid.

38.     Defendants did not have any probable cause or reasonable suspicion to seize and search Plaintiffs or their possessions. None of the Defendants, including the supervisory personnel, objected to or prevented Defendants' unlawful searches and seizures of Plaintiffs.

39.     There was no indication of any violence or other form of criminal activity in the Stateway Field House on February 22, 2001, at any time prior to the raid by Chicago police officers.

40.     Plaintiffs did not consent to Individual Defendants' search and seizure of Plaintiffs or Plaintiffs' possessions.

PLAINTIFFS BRENDA AND BRESHONTAE WILLIAMS

41.     Plaintiff Brenda Williams spent the afternoon of February 22, 2001 in the Stateway Field House, volunteering her time to teach community children to participate in an upcoming talent show. Plaintiff

Brenda Williams and her one-year-old daughter, Breshontae Williams, remained in the Field House to support and watch the scheduled evening basketball games of the Stateway Roundball Classic tournament.

42.     Plaintiffs Brenda and Breshontae Williams were enjoying the events inside the gymnasium, when the Individual Defendants burst in and blocked each of the exit doors and prevented Plaintiffs from leaving the Field House.

43.     The Individual Defendants ordered Plaintiffs Brenda and Breshontae Williams to leave the gymnasium and to line up near the main entrance doors in the lobby of the Field House.

44.     Brenda Williams held her baby, Breshontae, in her arms as the Individual Defendants forced Ms. Williams to stand in line in the lobby against her will. Brenda Williams carried her baby's diaper bag and purse over her back.

45.     The Individual Defendants then ordered Brenda Williams to put her baby, Breshontae, on the floor. One of the Individual Defendants, an unidentified female Chicago police officer, searched Brenda Williams up and down her body, searched inside of her pockets, and rifled through Ms. Williams' baby diaper bag and purse.

46.     Individual Defendants searched one-year-old Breshontae up and down her body, as she stood helpless on the ground, after the Individual Defendants removed Breshontae from the relative safety of her mother's arms.

PLAINTIFF ANDRE WILLIAMS

47.     Plaintiff Andre Williams arrived at the Field House at approximately 6:40 p.m. on February 22, 2001, to participate in the Stateway Roundball Classic.

48.     Plaintiff is a basketball player for Team #2 in the tournament, the defending champions of last year's Roundball Classic tournament. His team was scheduled to play at 8:00 p.m. on February 22, 2001.

49.     Another game involving different teams in the tournament began at approximately 7:00 p.m.

50.     Inside the gymnasium, before the start of Plaintiff Williams' game, Individual Defendants seized Plaintiff's gym bag, unzipped it, and rifled through Plaintiff's personal belongings inside of the bag. Individual Defendants further searched Plaintiff's coat and his coat pockets, and then threw Plaintiff's coat on the gymnasium floor.

51.     While Plaintiff was dressed in his official team basketball uniform for the tournament (green uniform shorts, a cut-off shirt, and basketball shoes), one of the Individual Defendants seized Plaintiff, treating him as a criminal, while searching Plaintiff's person.

## PLAINTIFF VICTORIA PALMER

52.     Plaintiff Victoria Palmer is a 13-year-old elementary student. Plaintiff's mother, Joyce Palmer permitted Victoria to accompany her friends to participate in the community basketball tournament in the Chicago Park District Field House on February 22, 2001.

53.     Victoria and her friends arrived soon after the first game had started. Because of the number of other spectators participating in the tournament, Victoria and her friends stood in the hall to watch the game (there were no seats left).

54.     Victoria was enjoying the first game, when the Individual police Defendants raided the Field House en masse and blocked all entrance and exit doors to the Field House.

55.     After the Individual Defendants stopped the tournament, they ordered Victoria to step into the lobby and to line up near the main lobby doors.

11

56.     Inside the lobby, one of the Individual Defendants, an unidentified Chicago police officer, ordered Victoria to hold her arms out as the Individual Defendant searched 13-year-old Victoria up and down her body.

PLAINTIFFS ANTHONY, KAREEM, AND JAREEM JACKSON

57.     Plaintiff Anthony Jackson brought his 9- and 10-year-old sons, Jareem and Kareem, to watch him play basketball in the second game of the Stateway Roundball Classic in the Stateway Field House on the evening of February 22, 2001.

58.     Inside the gymnasium, one of the Individual Defendants began searching Anthony Jackson's gym bag without his consent. The Individual Defendant threw Plaintiff Jackson's personal effects that were in his gym bag, including his cell phone and clothes, onto the gymnasium floor.

59.     When Plaintiff Jackson attempted to pick up his coat from the floor, one of the Individual Defendants seized and tore Mr. Jackson's coat, stating, "I'll do whatever I want to do."

60.     The Individual Defendants roughly seized Mr. Jackson's sons, Jareem and Kareem, and ordered the young boys to raise their arms as the Individual Defendants searched their bodies and inside their pockets.

61.     After Mr. Jackson orally objected to the Individual Defendants' search and seizure of his children, Defendant Thomas grabbed Mr. Jackson, placed Mr. Jackson's hands behind his back, forced handcuffs around Mr. Jackson's wrists, and searched Mr. Jackson up and down his body. Mr. Jackson was dressed solely in his short basketball uniform, when the Individual Defendants seized and searched him.

62.     Without probable cause, Defendants Thomas, Hoard, and Jones falsely charged Plaintiff Jackson with having committed the Illinois crime of Disorderly Conduct.

63. The criminal charges against Mr. Jackson were dismissed on March 29, 2001.

## THE PLANNING OF THE RAID

64. Upon information and belief, Defendant Ernest Brown, the Chicago Police Commander of the Public Housing Unit, planned and coordinated the Chicago police raid of the Stateway Roundball Classic.

65. According to Defendant Brown's plans, more than 20 Chicago police officers would invade the Field House in the middle of the February 22, 2001, Roundball Classic games, imprison Plaintiffs, and subject Plaintiffs to a mandatory search of their bodies and personal effects by Chicago police officers.

66. The February 22, 2001 raid involved officers from multiple units of the Chicago Police Department.

67. No Defendant, including Defendant Brown, obtained a warrant to raid the Roundball Classic, or to seize and search Plaintiffs or their personal effects.

68. When Defendant Brown coordinated the police raid, no Defendant, including Defendant Brown, had probable cause or other lawful justification to search or seize Plaintiffs, the community members who were participating in the Roundball Classic on February 22, 2001.

## ALLEGATIONS OF CONSPIRACY, INTENTIONAL CONDUCT, AND PROXIMATE CAUSE

69. Defendant Brown and the Individual Defendants, acting together and under color of law, reached an understanding, engaged in a course of conduct and otherwise conspired among and between themselves to deprive Plaintiffs of their Constitutional rights to be free from unreasonable searches and seizures. Defendant Brown and the Individual Defendants evidenced their agreement by their participation in the joint course of conduct alleged herein, including, but not limited to, the Individual Defendants' joint,

13

simultaneous and warrantless entry into the Stateway Field House, and the Individual Defendants' coordinated effort to detain, search, and seize Plaintiffs in a substantially uniform manner.

70.     Each of the Individual Defendants personally participated in the unconstitutional conduct or acted jointly with other Defendants who participated or acquiesced in the unconstitutional conduct, or was at least aware of the conduct or plan, and failed to take action to prevent such conduct from occurring.

71.     Defendant Brown and each of the Individual Defendants acted or failed to act knowingly and intentionally, wantonly or with reckless or callous disregard of, or indifference to, the rights of Plaintiffs.

72.     By their actions and omissions, the Individual Defendants destroyed the sanctity of Plaintiff's community basketball tournament, violated Plaintiffs' Constitutional rights, and robbed Plaintiffs and the Stateway community of one of its most sacred traditions, leaving Plaintiffs traumatized and violated, in a state of emotional fear, humiliation and shock.

73.     As a direct and proximate result of the conduct of Defendants described above, Plaintiffs were deprived of their Constitutional rights as stated below and have suffered and continue to suffer mental and emotional distress, including but not limited to humiliation, embarrassment, fear, discomfort, anxiety and other mental and emotional pain.

## CLAIM I:  FOURTH AND FOURTEENTH AMENDMENTS
### (Unlawful Search and Seizure)

74.     Plaintiffs reallege and incorporate herein paragraphs 1-76 above.

75.     Plaintiffs assert Claim I of this action against the Defendant Brown and the "Individual Defendants" in their individual capacities.  Claim I arises under 42 U.S.C. § 1983.

76.     The actions and omissions of the Defendants, without a warrant, probable cause or reasonable suspicion, in unreasonably and unjustifiably searching and seizing Plaintiffs and their personal

possessions deprived Plaintiffs of their Fourth and Fourteenth Amendment rights to be secure in their person, papers and effects against unreasonable searches and seizures.

77.     The aforementioned actions and inaction in the face of a Constitutional duty to intercede by the Individual Defendants were the direct and proximate cause of Plaintiffs' Constitutional violations and injuries, mental suffering, anguish, embarrassment, humiliation, and loss of personal freedom, as set forth more fully above.

78.     Each of the Defendant's actions and omissions was intentional, willful, and exhibited a conscious disregard or reckless indifference to Plaintiffs' rights. The award of punitive damages against each Defendant is necessary to punish each Defendant for his or her misconduct, and to deter similar misconduct.

WHEREFORE, Plaintiffs, on behalf of themselves and the Class they represent, pray that the Court:

(A)   Declare that this cause may proceed as a class action with named Plaintiffs as the class representatives and counsel for named Plaintiffs as counsel for the class;

(B)   Issue a declaratory judgment that the Defendants' acts and omissions as described in this Complaint have violated the United States Constitution by depriving Plaintiffs of their rights to be free from unreasonable searches and seizures;

(C)   Award Plaintiffs judgment against each of the Defendants, jointly and severally, for actual compensatory damages in an amount to be determined at trial;

(D)   Award Plaintiffs judgment against each of the Defendants, jointly and severally, for appropriate punitive damages in an amount to be determined at trial;

15

(E)    Award costs, expenses, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

(F)    Grant such other and further relief as this Court deems equitable and just.

## CLAIM II: FOURTH AND FOURTEENTH AMENDMENT
### (Unlawful Seizure and Detention)

79.    Plaintiffs reallege and incorporate herein paragraphs 1-78 above.

80.    Plaintiffs assert Claim II of this action against the Defendant Brown and the Individual Defendants in their individual capacities. Claim II arises under 42 U.S.C. § 1983.

81.    The actions and omissions of Defendant Brown and the Individual Defendants falsely arresting, and/or detaining Plaintiffs without probable cause or reasonable suspicion, deprived Plaintiffs of their Fourth and Fourteenth Amendment rights to be secure in their person, papers and effects against unreasonable searches and seizures.

82.    The aforementioned actions and inaction in the face of a Constitutional duty to intercede by the Individual Defendants were the direct and proximate cause of Plaintiffs' Constitutional violations and injuries, mental suffering, anguish, embarrassment, humiliation, and loss of personal freedom, as set forth more fully above.

83.    Each of the Defendant's actions and omissions was intentional, willful, and exhibited a conscious disregard or reckless indifference to Plaintiffs' rights. The award of punitive damages against Defendant Brown and each Individual Defendant is necessary to punish each Defendant for his or her misconduct, and to deter similar misconduct.

WHEREFORE, Plaintiffs, on behalf of themselves and the Class they represent, pray that the Court:

(A)   Declare that this cause may proceed as a class action with named Plaintiffs as the class representatives and counsel for named Plaintiffs as counsel for the class;

(B)   Issue a declaratory judgment that the Defendants' acts and omissions as described in this Complaint have violated the United States Constitution by depriving Plaintiffs of their rights to be free from unreasonable searches and seizures;

(C)   Award Plaintiffs judgment against each of the Defendants, jointly and severally, for actual compensatory damages in an amount to be determined at trial;

(D)   Award Plaintiffs judgment against each of the Defendants, jointly and severally, for appropriate punitive damages in an amount to be determined at trial;

(E)   Award costs, expenses, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

(F)   Grant such other and further relief as this Court deems equitable and just.

### CLAIM III:  SECTION 1983 CONSPIRACY

84.   Plaintiffs reallege and incorporate herein paragraphs 1-83 above.

85.   Plaintiffs assert Claim III of this action against the Defendant Brown and the Individual Defendants in their individual capacities.  Claim III arises under 42 U.S.C. § 1983.

86.   Defendant Brown and the individual Defendants, acting together and under the color of law, reached an understanding, engaged in a course of conduct and otherwise conspired among and between themselves to deprive Plaintiffs of their Constitutional rights to be secure in their persons, papers, and effects from unreasonable searches and seizures.  This course of conduct did deprive them of such rights protected by the Fourth and Fourteenth Amendments to the United States Constitution.

87.   In furtherance of this conspiracy, the Defendant Brown and the Individual Defendants committed the overt acts set forth in the Facts above, including but not limited to the Individual Defendants'

17

joint, simultaneous and warrantless entry into the Stateway Field House, and the Individual Defendants' coordinated effort to detain, search, and seize Plaintiffs in a substantially uniform manner. Upon information and belief, Defendant Brown conveyed orders to the Individual Defendants to raid the Stateway Field House and to detain, search and seize Plaintiffs and their personal effects.

88.     This conspiracy and the overt acts committed in furtherance thereof directly and proximately caused Plaintiffs' Constitutional violations and injuries as set forth above.

WHEREFORE, Plaintiffs, on behalf of themselves and the Class they represent, pray that the Court:

(A)    Declare that this cause may proceed as a class action with named Plaintiffs as the class representatives and counsel for named Plaintiffs as counsel for the class;

(B)    Issue a declaratory judgment that the Defendants' acts and omissions as described in this Complaint have violated the United States Constitution by depriving Plaintiffs of their rights to be free from unreasonable searches and seizures;

(C)    Award Plaintiffs judgment against each of the Defendants, jointly and severally, for actual compensatory damages in an amount to be determined at trial;

(D)    Award Plaintiffs judgment against each of the Defendants, jointly and severally, for appropriate punitive damages in an amount to be determined at trial;

(E)    Award costs, expenses, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

(F)    Grant such other and further relief as this Court deems equitable and just. reasonable

### CLAIM IV: ILLINOIS FALSE ARREST AND IMPRISONMENT

89.     Plaintiffs reallege and incorporate herein paragraphs 1-88 above.

90.    Claim IV of this Complaint is an Illinois common law action for false arrest and imprisonment asserted against the Defendant Brown, the Individual Defendants and their employer, the City of Chicago. This Court has jurisdiction of this claim under 28 U.S.C. § 1367.

91.    The actions and omissions by the Defendant Brown and the Individual Defendants described above were undertaken within the scope of their employment as police officers of the City of Chicago.

92.    The Individual Defendants' seizure and detention of Plaintiffs in the Stateway Field House, refusing to permit Plaintiffs to leave without being searched, and the Individual Defendants' search of Plaintiffs and their possessions, as more fully described above, were intentional, willful, wanton, unreasonable, and without probable cause; they denied Plaintiffs of their personal liberty against Plaintiffs' will; and they constitute the tort of false arrest and imprisonment under Illinois law. Further, these actions directly and proximately caused Plaintiffs' injuries as set forth above.

WHEREFORE, Plaintiffs, on behalf of themselves and the Class they represent, pray that the Court declare that this cause may proceed as a class action with named Plaintiffs as the class representatives and counsel for named Plaintiffs as counsel for the class; enter judgment in their favor against Defendant Brown, the Individual Defendants and the City of Chicago, jointly and severally for actual compensatory damages in an amount to be determined at trial; award Plaintiffs judgment against each of the Defendants (excluding the City of Chicago), jointly and severally, for appropriate punitive damages in an amount to be determined at trial; award all reasonable attorneys' fees and costs; and grant any additional relief this Court deems just and equitable.

### CLAIM V: ILLINOIS LOCAL GOVERNMENT TORT IMMUNITY ACT
### (745 ILCS 10\9-102–Defendant City of Chicago)

93.    Plaintiffs reallege and incorporate herein paragraphs 1-92 above.

19

94.     Claim V of this Complaint is an Illinois statutory claim against Defendant City of Chicago. This Court has jurisdiction of this claim under 28 U.S.C. § 1367.

95.     Defendant City of Chicago is the employer of each of the Individual Defendants.

96.     Each of the Individual Defendants and Defendant Brown committed the acts and omissions alleged above under color of state law and in the scope of their employment as employees of the City of Chicago.

WHEREFORE, should any of the Individual Defendants or Defendant Brown be found liable on one or more of the claims set forth above, Plaintiffs demand that, pursuant to 745 ILCS 10\9-102, the Defendant City of Chicago be found liable for any judgment Plaintiffs obtain thereon against said defendants, as well as for all attorneys' fees and costs awarded.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL CLAIMS.**

Respectfully submitted,

One of Plaintiff's Attorneys

Date: May 3, 2001

Craig B. Futterman
EDWIN F. MANDEL LEGAL AID CLINIC
6020 S. University
Chicago, Illinois 60637
(773) 702-9611
fax: (773) 702-2063
futterman@uchicago.edu
Attorney # 6206936

Thomas Peters, Esq.
542 S. Dearborn St.
Suite 750
Chicago, Illinois 60605
(312) 697-0022
fax: (312) 697-0812

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I.(a) PLAINTIFFS**

Andrea Williams, et al.

**DEFENDANTS**

Lieutenant Ernest Brown, et al.

JUDGE BUCKLO

MAGISTRATE JUDGE BOBRIC

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Cook
(EXCEPT IN U.S. PLAINTIFF CASES)

_Cat I_

DOCKETED

MAY 0 4 2001

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

# 01C 3228

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Craig B. Futterman, Mandel Legal Aid Clinic
6020 S. University Ave., Chicago, IL 60637
(773) 702-9611

ATTORNEYS (IF KNOWN)
Mara S. Georges
Corporation Counsel
121 N. LaSalle St., Room 600, Chicago, IL 6060

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINT AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DE |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| | | | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| | | **PRISONER PETITIONS** | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 530 General | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | |
| ☐ 290 All Other Real Property | | ☐ 540 Mandamus & Other | ☐ 871 IRS – Third Party 26 USC 7609 | |
| | | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act | |
| | | ☐ 555 Prison Condition | | |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

42. U.S.C. 1983 and 1988. Unreasonable search and Seizure by Police

**VII. REQUESTED IN COMPLAINT**  ☒ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23   DEMAND $   CHECK YES only if demanded in complaint  JURY DEMAND:  ☒ YES  ☐ NO

**VIII.** This case  ☒ is not a refiling of a previously dismissed action.
☐ is a refiling of case number _____, previously dismissed by Judge _____

DATE   May 3, 2001   SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS MAGISTRATE JUDGE BOBRICK

JUDGE BUCKLO

In the Matter of

DOCKETED

MAY 0 4 2001

Case Number: 01C 3228

Andre Williams, et al.
**Plaintiffs**

vs.

Ernest Brown, et al.
**Defendants**

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR: Andre Williams, Brenda Williams, individually and as next friend of her minor child Breshontae Williams; Anthony Jackson, individually ans as next friend of his minor children Jareem Jackson and Kareem Jackson;

Joyce Palmer as next friend of her minor child, Victoria Palmer, on behalf of themselves and all

other similary situated, Plaintiffs

| (A) | (B) |
|---|---|
| **SIGNATURE** | **SIGNATURE** |
| **NAME** Craig B. Futterman | **NAME** Thomas Peters |
| **FIRM** Edwin F. Mandel Legal Aid Clinic | **FIRM** Law Offices of Thomas Peters |
| **STREET ADDRESS** 6020 S. University Ave. | **STREET ADDRESS** 542 S. Dearborn, Suite 750 |
| **CITY/STATE/ZIP** Chicago, IL 60637 | **CITY/STATE/ZIP** Chicago, IL 60605 |
| **TELEPHONE NUMBER** 773 702-9611 **FAX NUMBER** 773 702-2063 | **TELEPHONE NUMBER** 312 697-0022 **FAX NUMBER** 312 697-0812 |
| **E-MAIL ADDRESS** futterman@uchicago.edu | **E-MAIL ADDRESS** thomasp0210@aol.com |
| **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** 6206936 | **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** 2183587 |
| **MEMBER OF TRIAL BAR?** YES [X] NO [ ] | **MEMBER OF TRIAL BAR?** YES [X] NO [ ] |
| **TRIAL ATTORNEY?** YES [X] NO [ ] | **TRIAL ATTORNEY?** YES [X] NO [ ] |
|  | **DESIGNATED AS LOCAL COUNSEL?** YES [ ] NO [ ] |

| (C) | (D) |
|---|---|
| **SIGNATURE** | **SIGNATURE** |
| **NAME** | **NAME** |
| **FIRM** | **FIRM** |
| **STREET ADDRESS** | **STREET ADDRESS** |
| **CITY/STATE/ZIP** | **CITY/STATE/ZIP** |
| **TELEPHONE NUMBER** **FAX NUMBER** | **TELEPHONE NUMBER** **FAX NUMBER** |
| **E-MAIL ADDRESS** | **E-MAIL ADDRESS** |
| **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** | **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** |
| **MEMBER OF TRIAL BAR?** YES [ ] NO [ ] | **MEMBER OF TRIAL BAR?** YES [ ] NO [ ] |
| **TRIAL ATTORNEY?** YES [ ] NO [ ] | **TRIAL ATTORNEY?** YES [ ] NO [ ] |
|  | **DESIGNATED AS LOCAL COUNSEL?** YES [ ] NO [ ] |

MAY - 3 PM 12: 35
CLERK U.S. DISTRICT COURT FILED-ED4