# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3228 | **DATE** | 6/30/2003 |
| **CASE TITLE** |  | Williams, et al. vs. Brown, et al. | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due ___ ___.
(3) ☐ Answer brief to motion due___ ___. Reply to answer brief due___ ___.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' motion for summary judgment is denied in part and granted in part. The motion is granted as to count II, granted in part and denied as to count I, and denied as to counts III, IV and V. Enter Memorandum Opinion and Order. Pretrial order will be due by 8/8/03 and response to any motions in limine by 8/22/03. Pretrial conference set for 10/3/03 at 3:00 p.m. Trial set for 12/1/03 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | **2** number of notices | **Document Number** |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | JUL - 1 2003 date docketed | 191 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | 15 docketing deputy initials | |
| | Mail AO 450 form. | 6/30/2003 | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| MPJ | courtroom deputy's initials | MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANDRE WILLIAMS, et al.,           )
                                   )
         Plaintiffs,               )
                                   )
   v.                              )   No. 01 C 3228
                                   )
LT. ERNEST BROWN, et al.,          )
                                   )
         Defendants.               )

JUL 1 2003

## MEMORANDUM OPINION AND ORDER

This class action suit arose from the alleged detention and search of numerous residents of the Stateway Gardens neighborhood during a basketball tournament on February 22, 2001. The plaintiffs, spectators at the event, claim that they were injured when police unlawfully forced them to submit to these searches, and filed this class action seeking damages and other relief.

The facts of the case are hotly disputed. According to the plaintiffs, police supervisors and officers engaged in a conspiracy to violate their rights. Following orders from their supervisors, the police raided the facility *en masse*, stopped the proceedings, and conducted apparently suspicionless, invasive searches of all participants and spectators, including women and children. According to this version of events, at no time did the police question the plaintiffs or ask permission to conduct the searches. Instead, they simply ordered the plaintiffs to exit the gymnasium and enter the lobby, blocked the exits, and thoroughly searched the



plaintiffs' bodies, pockets, coats, and bags, a process that took more than an hour.

According to the defendants' motion for summary judgment, the police arrived in groups over the course of the evening. They never blocked any exits or conducted any searches in the absence of individualized reasonable suspicion. The only invasive search conducted was incident to the arrest of a plaintiff for disorderly conduct. They did, however, recover two illegal firearms from the scene.

The plaintiffs filed a five-count complaint. Count I alleges that the plaintiffs were unlawfully searched and seized in violation of the Fourth and Fourteenth Amendments. Count II alleges that the plaintiffs were unlawfully detained in violation of the Fourth and Fourteenth Amendments. Count III alleges a civil conspiracy among the officers to violate the plaintiffs' civil rights. Counts IV alleges that the defendants committed the tort of false imprisonment and detention under Illinois Law. Count V seeks to hold the city liable for the injuries caused by its employees.

The defendants move for summary judgment on all counts. When deciding a motion for summary judgment, I must view all admissible evidence in the light most favorable to the non-moving party. *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002). I grant the motion as to Count II, grant it in part and deny it in part as to Count I, and deny it as to Counts III, IV, and V.

# I.

**Claim I, the plaintiffs' unlawful search and seizure claim, presents a jury issue.**

As a preliminary matter, a distinction must be made between the mass seizure of all occupants of the field house, and the seizure of individuals who were subjected to searches. Any mobile person who is searched against his will must be seized during the search; otherwise, he would simply walk away. *See Terry v. Ohio*, 392 U.S. 1, 16 (1968) ("It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."). Although the complaint uses similar language to describe seizure of individuals incident to searches (Count I) and the mass seizure of the entire group by blocking the exits (Count II), the two types of seizure must be analyzed separately. The presence or absence of one does not imply the presence or absence of the other.

In order to conduct a thorough search of a person, police must have individualized probable cause. *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). In order to conduct a brief investigatory stop and weapons pat-down, police must have reasonable individualized suspicion that the individual searched possesses a weapon. *Terry*, 392 U.S. at 27.

Both parties devote significant portions of their briefs disputing the existence and significance of an anonymous tip that

3

allegedly alerted the police to the threat of danger at the field house. An anonymous tip such as that alleged by the defendants would not, by itself, justify the wholesale, invasive search of large groups of people that the plaintiffs describe in their depositions. They claim that children were searched; that adults' purses, diaper bags, and pockets were searched; that the bodies of basketball players clad only in shorts and tank tops were searched. Viewing the facts in the light most favorable to the plaintiffs, a jury question exists as to the reasonableness of these searches in light of all the circumstances. If the jury accepts the plaintiffs' version of what occurred, qualified immunity would not protect the officers; the need for individualized suspicion prior to a search for weapons has been clearly established doctrine for thirty-five years. *Id.* Summary judgment is thus inappropriate on this claim insofar as it applies to individuals who were searched.

II.

**Claim II, the plaintiffs' claim that all occupants of the field house were seized and detained, is barred by qualified immunity.**

Plaintiffs contend that all class members were effectively imprisoned in the field house. Officers were posted at the exits, leading the plaintiffs to believe that they were not free to leave. This section addresses only the mass seizure of those plaintiffs

4

who were not searched; seizure incident to search is discussed above.

The test for determining whether an encounter between a police officer and a citizen is a seizure or detention within the meaning of the Fourth Amendment is an objective one; a citizen's subjective perception that he was not free to leave does not matter. "A person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Circumstances that might indicate a seizure, "even where the person did not attempt to leave," include "some physical touching of the person, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.*

The defendants point to a number of Supreme Court rulings that suggest that as a matter of law, a "reasonable person" is very strong-willed indeed. In *INS v. Delgado*, 466 U.S. 210 (1984), federal officers entered a factory in order to question the workers about their immigration status. Officers were posted at the doors to ensure that no one left the premises without being questioned. The court held that the workers were not seized because "most workers could have had no reasonable fear that they would be detained upon leaving." *Id.* at 219. Further, posting of officers by the doors "should have given [the workers] no reason to believe

5

that they would be detained ... if they simply refused to answer [questions]." *Id.* at 218. Most recently, in *United States v. Drayton*, 536 U.S. 194 (2002), an interstate bus driver permitted three police officers to board a bus. Two officers were stationed at the front and rear of the bus, facing the passengers, while a third patrolled the aisle, asking passengers for permission to search their luggage and their bodies. Plaintiffs consented to the search and were found to be in possession of cocaine. Expanding on a more limited ruling with similar facts in *Florida v. Bostick*, 501 U.S. 429 (1991), the Supreme Court ruled that the district court had properly denied the plaintiffs' motion to suppress this evidence. Relying largely on *Delgado*, the *Drayton* court explained that the circumstances would not suggest to a reasonable person that "he or she was barred from leaving the bus or otherwise terminating the encounter." *Id.* at 204.

It is true that all these cases may be distinguished from the facts at hand. Unlike the officers in *Delgado*, who sought only the opportunity to question the workers, defendants in this case allegedly were seeking to physically search the plaintiffs; unlike the officers in all the other cases cited above, who requested permission from the plaintiffs for each action they took, defendants here allegedly phrased their instructions as commands.

However, such distinctions do not permit Count II to survive the defendants' qualified immunity defense. "Qualified immunity

6

protects public officials from civil suit based on their discretionary functions except where such conduct violated 'clearly established' federal law." *Burns v. Reed*, 44 F.3d 524, 526 (7th Cir. 1995). The contours of the right must be so clear that any reasonable official would know that his actions violate the right. *Id*. The plaintiff bears the burden of meeting this standard. *Id*. This the plaintiffs cannot do. Reasonable legal minds could differ as to whether, under *Delgado* and *Drayton*, the officers' actions at the field house constituted a seizure of the attendees who were not searched. Where the application of the law is not certain even to trained lawyers, it would be incongruous to state that any reasonable police officer should understand the limits of its reach. The "seizing" at issue here took place within a gray area of Fourth Amendment law whose contours are still under development. Thus, insofar as the unlawful detention claim is concerned, the defendant police officers are sheltered by qualified immunity.

As discussed above, individual plaintiffs who were searched were seized during the search process. But summary judgment for the defendants is granted as to those plaintiffs who occupied the field house and who were not searched.

### III.

**All officers inside the field house may be liable for the searches and seizures complained of in Claim I, but those who were stationed outside may not.**

The defendants argue that even if the officers who actually conducted the searches violated the Fourth Amendment, their fellow officers who did not search anyone cannot be liable for their co-defendants' actions. They are incorrect in the case of officers inside the field house who witnessed the searches, but correct in the case of the officers who were stationed outside the field house and could not see what was going on inside.

Police officers may be liable for their failure to protect a plaintiff when a fellow officer violates a plaintiff's rights in their presence. *Byrd v. Brishke*, 466 F.2d 6, 10 (7th Cir. 1972).

> An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if the officer had reason to know ... that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring.

*Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (emphasis in original). Some of those officers insist that they saw no searches performed whatsoever, but other officers acknowledge searching multiple individuals. According to the plaintiffs, unconstitutional searches took place in the lobby, the gymnasium, and private offices in the field house. If the plaintiffs' version of events is accepted by the jury, then every officer inside the field house may have seen what was occurring, and had a realistic opportunity to intervene.

Furthermore, the officers inside the field house were not merely witnesses to the searches; according to the plaintiffs, they assisted by providing crowd control, moving the plaintiffs from the gymnasium into the lobby, and otherwise helping the process along. Such knowing cooperation with fellow officers who were performing unconstitutional acts has also been found to be a basis for § 1983 liability. *Gagnon v. Ball*, 696 F.2d 17, 21 (2d Cir. 1982).

However, the officers who were posted outside the field house and could not see the searches from where they stood (Officers Brown, Elliott, Brandon, Lee, Griffith, and Zacek) cannot be considered to have had the same opportunity to intervene as those indoors. Courts in this circuit have found that officers who were not physically present during unconstitutional acts committed by their peers may not be liable under § 1983 for their failure to intervene. *See Brzozowski v. Gorniak*, No. 93 C 3830, 1995 U.S. Dist. LEXIS 18396, at *18 (N.D. Ill. Dec. 12, 1995) (Zagel, J.) (granting summary judgment in favor of defendant police officers who waited outside while other officers searched the plaintiff's home); *Cannaday v. Gibas*, 803 F. Supp. 1516, 1519 (E.D. Wis. 1992) (dismissing claim against defendant agent who waited downstairs while fellow agents searched the upper level of the plaintiff's home); *Sampson v. Weidell*, No. 84 C 6360, 1986 U.S. Dist. LEXIS 24794, at *13 (N.D. Ill. May 30, 1986) (Marovitz, J.) (granting partial summary judgment in favor of defendant firefighters who did

9

not enter the plaintiff's residence). Even if the officers posted outside should have realized what was allegedly going on indoors, such negligent failure to perceive a constitutional violation is not actionable under § 1983. *Rascon v. Hardiman*, 803 F.2d 269, 276 (7th Cir. 1986). Only an officer who willfully turns a blind eye to his colleagues' actions may be liable. *Id.* at 277. The plaintiffs simply do not present any evidence that the officers outside intentionally chose not to perceive the searches. Nor did the outside officers do anything that could permit such an inference to be drawn from their behavior. I find that the officers who did not enter the field house did not have a reasonable opportunity to intervene on behalf of the plaintiffs, and thus summary judgment is granted in favor of Officers Brown, Elliott, Brandon, Lee, Griffith, and Zacek on plaintiffs' search and seizure claims.

**IV.**

**Claim III, the plaintiffs' conspiracy claim, is not barred by the intracorporate conspiracy doctrine.**

Plaintiffs allege that the defendants entered into a conspiracy to deprive them of their constitutional rights by agreeing in advance to commit the alleged illegal acts. Defendants argue that the plaintiffs' conspiracy claim must fail due to the intracorporate conspiracy doctrine, which states that "employees of a corporation who jointly pursue its lawful business do not become 'conspirators' when acts within the scope of their employment are

10

said to be retaliatory or discriminatory." *Tabor v. Chicago*, 10 F. Supp. 2d 988, 994 (N.D. Ill. 1998) (Gettleman, J.). The Seventh Circuit has found that the doctrine applies in cases arising under § 1985, *Travis v. Gary Cmty. Health Ctr.*, 921 F.2d 108, 110-11 (7th Cir. 1990), but has not ruled on whether it applies in cases arising under § 1983. *Moreno v. Town of Cicero*, No. 01 C 1726, 2002 U.S. Dist. LEXIS 16915, at *10 (N.D. Ill. Sep. 5, 2002) (Leinenweber, J.). The remaining circuits are split on the question. *Salto v. Mercado*, No. 96 C 7168, 1997 U.S. Dist. LEXIS 5796, at *3 (N.D. Ill. Apr. 24, 1997) (Zagel, J.). Prior to the *Travis* ruling in 1990, the Seventh Circuit did uphold, without discussion of the intracorporate conspiracy doctrine, a jury verdict finding that police officers has conspired to violate the rights of a plaintiff who was framed for murder. *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988).

Since *Travis*, courts in this district have been divided as to whether to apply the intracorporate conspiracy doctrine in cases that, like this one, involve § 1983 suits against police who allegedly conspired to violate a citizen's constitutional rights. *See, e.g., David v. Village of Oak Lawn*, No. 95 C 7368, 1996 U.S. Dist. LEXIS 5624, at *11 (N.D. Ill. Apr. 29, 1996) (Gettleman, J.) (holding *sua sponte* that the intracorporate conspiracy doctrine barred a conspiracy complaint against police officers whose ability to injure the plaintiff was derived solely from their positions

11

within the corporate entity); *but see Salto*, 1997 U.S. Dist. LEXIS 5796, at *5 (holding that while a police department cannot conspire with itself when formulating policy, a charge that "a number of officers took concerted action to work together to harm" a plaintiff is "a classic charge of conspiracy"); *Cooper v. Harris*, No. 99 C 1623 and No. 98 C 1624, 1999 U.S. Dist. LEXIS 6149, at *8 (N.D. Ill. Apr. 13, 1999) (Grady, J.) (following *Salto*); *Northen v. City of Chicago*, No. 93 C 7013, 1999 U.S. Dist. LEXIS 7897, at *12 (N.D. Ill. May 17, 1999) (Holderman, J.) (same); *Newsome v. James*, No. 96 C 7680, 2000 U.S. Dist. LEXIS 5678, at *46 (N.D. Ill. Apr. 26, 2000) (Plunkett, J.) (holding that the intracorporate conspiracy doctrine was "created to shield corporations and their employees from conspiracy liability for routine, collaborative business decisions that are later alleged to be discriminatory," so where a group of officers took concerted action to harm victims, conspiracy liability was appropriate); *Moreno*, 2002 U.S. Dist. LEXIS 16915, at *10 (following *Newsome*).

I am persuaded by the reasoning of Judge Plunkett in *Newsome*. The mass search and detention alleged here was far from routine. Viewing the facts in the light most favorably to the plaintiffs, the defendants detained and searched an entire crowd of men, women, and children without individualized suspicion. The policy motive behind the doctrine does not apply.

## V.

**Claim III presents a jury question.**

The definition of a civil conspiracy is quite broad:

> To be liable as a conspirator you must be a voluntary participant in a common venture, although you need not have agreed on the details of the conspiratorial scheme or even know who the other conspirators are. It is enough if you understand the general objectives of the scheme, accept them, and agree, either explicitly or implicitly, to do your part to further them.

*Jones*, 856 F.2d at 992. Because direct evidence of a conspiracy is usually impossible to obtain, absent the testimony of a co-conspirator, circumstantial evidence is the usual manner of proving a civil conspiracy. Therefore, the question of "whether an agreement exists should not be taken from the jury in a civil conspiracy case so long as there is a possibility that the jury can infer from the circumstances" that the defendants conspired to injure the plaintiffs. *Hampton v. Hanrahan*, 600 F.2d 600, 621 (7th Cir. 1979).

This conspiracy claim presents a jury question because the plaintiffs have offered circumstantial evidence suggesting a conspiracy. While the defendants claim that the officers trickled into the field house, one group at a time, the plaintiffs claim that the officers entered all at once. The plaintiffs offer evidence that the officers interrupted the proceedings and searched the attendees in a cooperative and organized manner. If a jury believed the plaintiffs, it would be reasonable to infer from the

13

mass arrival and subsequent cooperation that some planning had taken place in advance. It would also be reasonable to infer that the plan included, implicitly or explicitly, the universal detention and search of attendees. Thus, summary judgment on the claim is not appropriate.

### VI.

**Claims IV and V, plaintiffs' state-law claims, withstand defendant's motion for summary judgment.**

Claim IV is based on the Illinois tort of false arrest and detention. Claim V is based on 745 ILL. COMP. STAT. 10/9-102, which makes the city liable for the torts committed by its employees within the scope of their employment. The defendants' only argument in favor of summary judgment on claims IV and V is that summary judgment for the defendants on claim I, II, and III would necessitate the dismissal of claim IV, which is redundant of claims I and II, and moot claim V. This may be true, but as I decline to make such a ruling regarding claims I, II, and III, the defendants present no relevant support for their motion. The motion for summary judgment on claims IV and V is denied.

The motion for summary judgment is DENIED in part and GRANTED in part.

ENTER ORDER:

Elaine E. Bucklo
United States District Judge

Dated: June 30, 2003